IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIBERTY DISPOSAL INC. et al., | ) | |
| | ) | Civil Action No. 09 C 1985 |
| Plaintiffs, | ) | |
| | ) | Judge Ruben Castillo |
| vs. | ) | Magistrate Judge Schenkier |
| | ) | |
| DOUGLAS P. SCOTT, in his official capacity | ) | |
| as Director of the Illinois Environmental | ) | |
| Protection Agency, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DECLARATORY RELIEF
AND PERMANENT INJUNCTION AGAINST DEFENDANT**

Defendant Douglas P. Scott, Director of the Illinois Environmental Protection Agency, by his attorney, Lisa Madigan, Attorney General of the State of Illinois, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submits the following memorandum of law in support of his motion to dismiss:

**INTRODUCTION**

The following facts, taken from Plaintiff's Complaint for Declaratory Relief and Permanent Injunction Against Defendant, are taken as true for purposes of this motion to dismiss. Plaintiffs are waste haulers and waste producers who wish to use United Disposal's waste transfer station in Bradley, Illinois. (Plaintiffs' Complaint, ¶ 4.) Liberty Disposal, Inc. is, according to the Complaint, an Illinois Corporation and a waste transporter. The Complaint explains that Liberty Disposal transports waste for waste generators "from within and outside Bradley, Illinois," but there is no mention in the Complaint of Liberty Disposal's desire to engage in interstate commerce. (Complaint ¶ 6.) The City of Kankakee "for itself and its residents is a

waste generator," according to the Complaint. (¶ 7.) A municipality cannot bring a suit under Section 1983. *Rockford Bd. of Educ., School Dist. No. 205 v. Illinois State Bd. of Educ.*, 150 F.3d 686, 688 (7th Cir. 1998). Also, the City of Kankakee and its residents are not engaged in interstate commerce. ABC Disposal, Inc. is a waste transporter that would rather use United Disposal because it is closer to customers ABC hopes to recruit and charges a lower fee than an alternative transfer station in Momence, Illinois. (Complaint, ¶ 8.) The waste transfer station in Momence, Illinois, holds an Illinois EPA permit with no geographical limits on waste collection. (Complaint ¶ 5.) Neblock Trucking, Inc. is engaged in interstate commerce, according to the Complaint, and could also use the waste transfer station in Momence, but would rather use United Disposal because it charges a lower fee. (Complaint, ¶ 9.) Brett Lindgren is an individual resident in the State of Illinois who previously lived in Bradley and was a residential customer of United Disposal. Because he now lives outside of their service area, he must also use the Momence transfer station. (Complaint ¶ 10.) John Andruch, Jr. and Jack Andruch operate a farm with property in both Illinois and Indiana and they would prefer to use United Disposal rather than the Momence transfer station. (Complaint ¶ 11.)

Defendant Douglas P. Scott is the Director of the Illinois Environmental Protection Agency and he is sued in his official capacity. (Complaint, ¶ 12.) The Plaintiffs bring this suit to challenge a condition on the permit granted by the IEPA to United Disposal that limits the waste that United Disposal may accept. Specifically, the condition challenged is "Special Condition No. 9 which provided: 'No waste generated outside the municipal boundaries of the Village of Bradley may be accepted at this facility.'" (Complaint, ¶ 25.)

None of the Plaintiffs have standing or a valid Commerce Clause challenge. At least one is barred from bringing a Section 1983 suit on its own behalf, and most are not engaged in or prevented from engaging in interstate commerce. All they have in common is a wish that United Disposal could accept waste generated outside of the Village of Bradley. United Disposal, however, did not complete the application process, or siting approval, necessary to accept waste from outside of the Village of Bradley.

**STANDARD FOR RULE 12(b)(6) MOTIONS TO DISMISS**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir.1997). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 977 (7th Cir. 1999). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). The Court need not accept legal conclusions as true and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. ___, 2009 WL 1361536, *13 (May 18, 2009) (internal quotations omitted).

**ARGUMENT**

Plaintiffs lack standing to bring this challenge to United Disposal's operating permit condition and the condition itself is not a violation of the dormant Commerce Clause. Further, Plaintiffs cannot maintain a separate claim for a violation of 42 U.S.C. § 1983.

**A.     Plaintiffs Lack Standing**

Plaintiffs' Complaint should be dismissed because Plaintiffs lack prudential standing to bring this suit. Prudential standing is "a nonconstitutional doctrine, entirely judge-made, of standing" which "precludes the federal courts from exercising jurisdiction over some types of case that Article III would not forbid the courts to adjudicate." *Mainstreet Organization of Realtors v. Calumet City*, 505 F.3d 742, 745 (7th Cir. 2007). "One such prudential principle is that the plaintiff's complaint must 'fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Individuals for Responsible Government, Inc. v. Washoe County*, 110 F.3d 699, 703 (9th Cir. 1997)(citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 474 (1982)). "The so-called 'zone of interests' test 'denies a right of review if the plaintiff's interests are . . . marginally related to or inconsistent with the purposes implicit in the [relevant constitutional provision]." *Id*. (citing *Wyoming v. Oklahoma*, 502 U.S. 437, 469 (1992)(Judge Scalia dissenting)). "[T]he zone of interests test also governs claims under the Constitution in general, and under the negative [dormant] Commerce Clause in particular." *Id*.

In order to have standing, Plaintiffs must have "more than a marginal relationship to the purpose underlying the dormant Commerce Clause. The chief purpose underlying that Clause is to limit the power of the States to erect barriers against interstate trade." *Id*. The Court in *Washoe*

then held that plaintiffs lacked standing because their injury "is solely that Washoe County's garbage collection ordinance forces them to pay for unnecessary and unwanted garbage service" and is, therefore, "not even marginally related to the purposes underlying the dormant Commerce Clause." *Id*.

Plaintiffs' Complaint fails to show grounds for Plaintiffs to have standing to challenge United Disposal's permit conditions. Plaintiffs aver that their injury is that they must pay a higher fee to use the Momence transfer facility rather than United Disposal's facility. As in *Washoe*, Plaintiffs' injuries are therefore not even marginally related to the purposes underlying the dormant Commerce Clause.

Additionally, one cannot sue in federal court to enforce someone else's legal rights. *Mainstreet,* 505 F.3d at 746. In *Mainstreet*, the real estate broker plaintiffs lacked standing to bring suit to challenge an ordinance which forbid the sale of a home without a city building and zoning compliance inspection. The court found that the ordinance's initial victim was a homeowner who wanted to sell his home. Other people are subsequently harmed – brokers, title companies, lenders, etc., but if all were allowed to sue, the courts would be overwhelmed. The court held that the brokers were not suing to enforce their constitutional property rights because the brokers had no rights in potential commissions lost due to the ordinance. *Id*.

The same reasoning is applicable to the instant case. Plaintiffs are not suing to enforce their own constitutional rights because they have no constitutional right to lower priced trash collection or to use a specific transfer station. Plaintiffs have not alleged that they are prevented from sending out of state trash to the State of Illinois, only that they must use a properly licensed facility rather than United Disposal's facility. What Plaintiffs are trying to accomplish through a

back door approach is to change the terms of the transfer station permit which was issued to United Disposal in December 1994 and which United Disposal unsuccessfully attempted to amend in 2003. See *United Disposal of Bradley, Inc. v. Pollution Control Board*, 363 Ill.App.3d 243, 842 N.E.2d 1161 (3rd Dist. 2006) (Discussed below.)

For the foregoing reasons, Plaintiffs lack standing to bring this suit and the Complaint should be dismissed in its entirety.

### B. Plaintiffs Fail to Allege a Dormant Commerce Clause Violation

Plaintiffs' only substantive allegation fails to state a claim upon which relief can be granted because the EPA's operating permit Special Condition No. 9, which restricts United Disposal from accepting waste that is generated outside the municipal boundary of the Village of Bradley does not violate the dormant Commerce Clause. United Disposal, itself, brought this identical challenge in Illinois state court and the Appellate Court of Illinois, Third District rejected it. (Referenced in Paragraph 25 of the Plaintiffs' Complaint.) The Appellate Court held specifically that the condition in the operating permit did not violate the commerce clause. *United Disposal of Bradley, Inc. v. Pollution Control Board*, 363 Ill.App.3d 243, 842 N.E.2d 1161, (3rd Dist. 2006).

The Constitution gives Congress the power to regulate commerce among the states. Even when Congress has not specifically exercised that authority, "state or local regulations may violate the Commerce Clause either because the regulations discriminate against interstate or foreign commerce, or because they incidentally affect such commerce." *De Hart v. Town of Austin, Indiana*, 39 F.3d 718, 723 (7th Cir. 1994.) In essence, the 'negative' or 'dormant' aspect of the Commerce Clause prohibits States from advancing their own commercial interests by

curtailing the movement of articles of commerce, either into or out of the state. The dormant Commerce Clause applies with full force to state regulation of the collection, transportation, processing, and disposal of solid waste." National Solid Wastes Management Ass'n. v. Meyer 63 F.3d 652, 657 (7th Cir. 1995) (Citations omitted.)

There is not a Commerce Clause problem in the instant case. As the State Court case explains, when United Disposal sought and obtained the operating permit in question, it had a choice: apply for a regional pollution control facility permit and obtain siting approval or apply for a permit to operate a local pollution control facility which did not require siting approval. *United Disposal*, 363 Ill.App.3d at 246. Siting approval, or site location approval, is an application process described fully in the Illinois Environmental Protection Act. 415 ILCS 5/39.2. Plaintiffs state in their complaint, "United Disposal has informed Liberty Disposal that it is unable to accept waste generated outside the boundaries of Bradley because of the geographical restriction in its Illinois EPA permits." (Complaint, ¶ 6.) While this is true, it is a somewhat disingenuous description because the record in the State case was clear that United Disposal only applied for and obtained a permit to operate a local pollution control facility and did not seek proper siting approval necessary to apply for a regional pollution control permit[1]. *Id*. As Plaintiffs note, in response to an unpublished court order in *Tennsv, Inc. v. Gade*, No. 92 503 WLB (S.D.Ill. July 8, 1993) the Illinois legislature amended the Act and removed the distinction

---

[1] Court may take judicial notice in a motion to dismiss. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)(court may take judicial notice of matters of public record without converting motion to dismiss into motion for summary judgment); *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983)(courts may take judicial notice of "proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have direct relation to matters at issue").

between regional and local pollution control facilities. All pollution control facilities in Illinois are now required to obtain siting approval. 415 ILCS 5/3.330, 39(c), 39.2. Although Plaintiffs mention *Tennsv*, they do not explain its relevance to their Complaint. In fact, it has none. United Disposal has not ever sought to obtain siting approval. Therefore, it cannot operate as a regional pollution center under the old law or the new. It is not a dormant Commerce Clause violation that stops the Plaintiffs from hauling waste to United Disposal; it is United Disposal's own choice not to obtain siting approval and seek a permit without the challenged restriction.

### 1.     There is no *per se* violation of the Commerce Clause

Because United Disposal did not do what was necessary to qualify as a regional pollution control facility, the condition limiting its intake to local waste is not a *per se* violation of the Commerce Clause. *Untied Disposal* 363 Ill.App.3d at 246. Further, this is not a situation in which commerce is halted directly at a state border or in which out-of-state waste is subject to increased fees or surcharges that are not applied to instate waste. *Id*. at 248; See *Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531 (1978) and *Chemical Waste Management, Inc. v. Hunt*, 504 U.S. 334, 112 S.Ct. 2009 (1992).

### 2.     There is No Undue Burden on Interstate Commerce

After determining that there is no *per se* violation, the Court must next apply the *Pike* balancing test. "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc*. 397 U.S. 137, 142 (1970); *Alliant Energy Corp. v. Bie*, 330 F.3d 904, 911 (7th Cir. 2003). Plaintiffs allege that the EPA lacks a "legitimate, non-discriminatory

justification for prohibiting the transport of waste generated outside the boundaries of Bradley and outside of Illinois to United Disposal's solid waste transfer station in Bradley." (Complaint ¶ 29.) This is incorrect. Protecting the public health and safety by regulating waste disposal is a legitimate governmental purpose. *United Disposal* 363 Ill.App.3d at 249; *L & H Sanitation, Inc. v. Lake City Sanitation, Inc.*, 769 F.2d 517 (8th Cir. 1984). Certainly waste traveling through and being disposed in different communities is valid concern of the EPA that justifies requiring siting approval. "If a legitimate local purpose is found, then the question becomes one of degree." *Pike*, 397 U.S. at 142.

The burden in this instance is minimal. In *Pike*, the United States Supreme Court struck down a law that would have required a cantaloupe grower to build an expensive facility just to package cantaloupes in a certain manner to preserve the good name of Arizona cantaloupes. 397 U.S. at 144. In this case, the Plaintiffs, most of whom are located in the State of Illinois, must simply chose another waste transfer station in their state. As explained above, the burden examined is not even that of the Plaintiffs here but of United Disposal, itself.

  **C.**  **Plaintiffs' Second Claim (Count II) Fails to State a Claim Upon Which Relief May be Granted Because Section 1983 is Not a Source of Rights**

Section 1983 is not a source of rights; it is a mechanism for individual rights found elsewhere (i.e. Constitution and federal laws). "One cannot go into court and claim a violation § 1983 - for § 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617 (1979). See also *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Gonzaga University v. Doe*, 536 U.S. 273, 285 (2002). Since an individual cannot violate § 1983 itself, Plaintiffs' "Second Claim for Relief (Violation of 42 U.S.C. §

1983)" is improper and should be struck. It is essentially identical to Plaintiffs' "First Claim for Relief (Violation of U.S. Const., Art. 1, § 8, CL. 3)" and simply restates the Plaintiffs' dormant Commerce Clause challenge in an incorrect manner.

## CONCLUSION

The Plaintiffs lack standing to challenge United Disposal's operating permit conditions and the they cannot sustain a Commerce Clause or Section 1983 claim against the Defendant. For the foregoing reasons, Defendant Douglas P. Scott, Director of the Illinois Environmental Protection Agency, requests that his motion to dismiss be granted.

Respectfully Submitted,

LISA MADIGAN
Attorney General of Illinois

  /s/ *Rachel Fleischmann*
RACHEL FLEISCHMANN
JAMES A. LANG
Assistant Attorneys General
Office of the Illinois Attorney General's Office
100 W. Randolph, 13th Floor
Chicago, Illinois 60601
312-814-6122 phone