**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**Eastern Division**

|  |  |
|---|---|
| NEBLOCK TRUCKING, INC.;<br>JOHN ANDRUCH and JACK<br>ANDRUCH, JR. d/b/a WALNUT FARMS<br><br>      Plaintiffs,<br><br>      v.<br><br>DOUGLAS P. SCOTT, in his official<br>capacity as Director of the Illinois<br>Environmental Protection Agency;<br><br>      Defendant. | Case No.: 09 CV 1985<br><br>Judge Castillo<br><br>Magistrate Judge Schenkier |

**PLAINTIFFS' MOTION FOR RECONSIDERATION AND,**
**ALTERNATIVELY, FOR CLARIFICATION OF THE COURT'S**
**DECEMBER 17, 2009, DISMISSAL ON THE BASIS OF MOOTNESS**

Plaintiffs seek reconsideration or, alternatively, clarification from this Court, with great respect for this Court's decision-making, for the purpose of achieving, without further controversy, the relief it requested: to declare that Special Condition No. 9 in Permits 1994-306-DE, and No. 1994–306–OP, amended by No. 2006-154-SP violates Article I, Section 8, Clause 3 of the United States Constitution; to permanently enjoin the Defendant from enforcing said permit condition; and, pursuant to 42 U.S.C. § 1981, *et seq.*, award Plaintiffs their reasonable attorneys' fees and costs in this matter. On August 26, 2009, this Court issued a Memorandum and Order finding that the "alleged conduct is

discriminatory on its face." (Dkt. 35, p. 12).   Thereafter, the relevant allegations (including that waste is interstate commerce) were admitted by the Defendant (Dkt. 36).

However, the Defendant, on the due date of its responsive position statement for purposes of a settlement conference with the Magistrate Judge and without notice to or request from the transfer station operator, voluntarily and unilaterally issued a supplemental development and operational permit to the transfer station removing the discriminatory permit condition. *See*, Dkt. 43 (Minute Order from Hon. Schenkier reporting "Defendant states that it has decided to reissue the permit in issue without Special Condition No. 9 . . . ."). Shortly thereafter (though on the docket it incorrectly appears as if it occurred prior to the telephone status conference with Magistrate Judge Schenkier), the Defendant filed a motion to dismiss on the basis of mootness and attached the new permit from which the discriminatory condition had been removed. (Dkt. 42). However, Defendant failed to raise before this Court the legal basis for its voluntary action removing the discriminatory permit condition and, failed to identify for this Court that Illinois EPA has represented in court filings that such a voluntary, unilateral change could not be legally done. (Exhibit A, p. 5) (stating that Illinois EPA has "no authority to make such a unilateral decision.").

Plaintiffs understand that the test for mootness is stringent, and it requires the movant to satisfy a "'heavy burden of persuading' the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 189 (1999) (*quoting United States v. Concentrated Phosphate Export Assn.* 393 U.S. 199, 203 (1968)). Even though the Defendant cites nothing to support his notion that re-issuing the permit without the discriminatory language moots the case, the Court

granted Defendant's motion on December 17, 2009, for the simple reason that, other than attorneys fees, Defendant's action appears to achieve the relief Plaintiffs' sought.[1]  *See* Dkt. 42, p. 3 and Dkt. 44).  Simplicity can be deceiving.

Defendant has fought *against* the removal of the discriminatory permit condition that he has now removed, for nearly a decade.  In fact, the Illinois EPA, as authorized by Defendant, even brought an enforcement action against United Disposal alleging, among other things, that the transfer station accepted a *single* load of waste from outside the Village of Bradley.  *People of the State of Illinois v. United Disposal of Bradley, Inc.*, 08 CH 41 (Kankakee County Circuit Court, 21st Judicial Circuit, IL).[2]  Thus, though Plaintiffs seem to have achieved a part of their goal with this case by virtue of the recent permit issuance, Defendant's voluntary, unilateral decision to modify the permit is insufficient to resolve the controversy.   Therefore, Plaintiffs seek this Court's reconsideration and, alternatively clarification, so that the permit re-issuance holds its weight against any further attack.

Importantly, the potential impact of a mootness determination in this case may be to render the Court's August 26, 2009, Memorandum and Opinion—the driving force behind the Defendant's conduct—to legally vanish. *See Boyce v. Ashcroft*, 268 F.3d 953, 955 (10th Cir. 2001) ("Our decision to vacate the judgment [as moot] and direct the district court to vacate its judgment removes the preclusive effect (if any) of the vacated judgments.")  Indeed, without binding precedent from this Court; because Illinois EPA

---

[1] The Court, in its December 17, 2009, Minute Order also set a date (January 27, 2009) for Plaintiffs to file a fee petition, which Plaintiffs intend to do.  This Motion is not intended to address that fee petition or raise or waive any rights associated with it.  Likewise, the Plaintiffs do not intend by this filing to waive any rights associated with its potential filing of an amended complaint in this case pursuant to that same Minute Order.
[2] Though the Illinois EPA has represented to this Court and the Circuit Court of Kankakee, through its attorneys, that it intends to dismiss a portion of or amend the enforcement complaint against United Disposal to remove those allegations, the allegations are still pending as of this filing..

previously represented that Defendant's voluntary action herein could *not* be done legally; and because of existing State of Illinois case law; Plaintiffs' use of the transfer station and Defendant's issuance of the new, non-discriminatory permit is subject to attack.

This case comes with the possibly unique and certainly not simple history of having Illinois Pollution Control Board ("IPCB") and Illinois Appellate Court published decisions that rule opposite to this Court's determination that the geographic permit restriction on waste acceptance is *per se* discriminatory. *United Disposal of Bradley, Inc. v. Illinois EPA*, PCB 03-235, 2004 WL 1470978 (June 17, 2004); *United Disposal of Bradley, Inc. v. Illinois Pollution Control Board, et al.*, 842 N.E.2d 1161 (3rd Dist. App. Ct. IL) (both of which are attached as Exhibit B). Thus, as discussed below, even though Defendant has issued a new, non-discriminatory permit, Plaintiffs and Defendant may be challenged through state claims not removable to the federal courts.

## ARGUMENT

### *The Court, Respectfully, Erred in its Determination of Mootness: This Case Is Not Moot*

"[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). The tribunal will do so *only if* it is "*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Concentrated Phosphate Export Assn.* 393 U.S. at 203 (emphasis added). Although the reissued permit now lacks the *per se* discriminatory language, the new permit now stands in direct conflict with what the Illinois EPA previously represented was its legal authority (*i.e.*, that it had *no* authority to voluntarily change the permit. *See*

Exhibit A.) and, potentially in conflict with the two prior United Disposal decisions (Exhibit B) concerning the permit. Thus, there remains open the potential for challenge by third-parties.

*Adarand Constructors, Inc. v. Slater, Secretary of Transportation*, 528 U.S. 216 (1999) is helpful to understanding this impact. There, the plaintiff sued the Colorado Department of Transportation ("CDOT") for the method it used to certify businesses as disadvantaged. *Id.* at 219. The CDOT lost its case in the District Court, and while the case was on appeal to the Tenth Circuit, the Plaintiff initiated another suit and requested he receive disadvantaged status. *Id.* at 220. CDOT complied with the plaintiff's request. *Id.* at 220-21. The Tenth Circuit then dismissed the first case as moot, stating that CDOT had voluntarily ceased its violative conduct, and there was no further remedy the plaintiff could obtain. *Id.* at 221. The Supreme Court reversed, holding that the CDOT failed to prove its heavy burden because, inter alia, "[g]iven the patent incompatibility of the certification with the federal regulations, it is far from clear that" the certification will not be challenged successfully by third parties. *Id.* at 223-24.

The posture in the present action is different, but the principle is the same. Plaintiffs challenged the discriminatory permit condition in the permit that Illinois EPA issued to United Disposal, and the Defendant re-issued the permit, purportedly remedying the constitutional infirmity. Yet, because the permit is now "patently inconsistent" with two published state decisions and the Illinois EPA's former representations that it lacked legal authority to make the change implemented by the Defendant herein, it is ripe for third party challenge. Thus, even if the defendant's cessation is entirely genuine—even if he truly intends to leave the permit as it now stands—he has made no showing that

injunctive relief is moot, and he has certainly not shown it is "absolutely clear" that future

litigation will not force the him to restore the restrictions or that a future administrator

will not do so.

> **A.** *The Plaintiffs face a potential third-party citizen suit challenging their use of United Disposal's transfer facility under the new permit*

Enforcement proceedings may be initiated against any person allegedly violating

the Act, any rule or regulation adopted under the Act, any permit or term or condition of

a permit, or any Board order (415 ILCS 5/31(d)(1)). These proceedings are commonly

known as citizen suits and are filed before the IPCB. (*Id.*; 35 IAC 103.106, *et seq.*). The

IPCB is the administrative board that incorrectly determined it had the authority to

interpret the U.S. Constitution and is the administrative board on which the Illinois

Appellate Court relied on in determining, in opposition to this Court, that *Tennsv v. Gade*,

No. 92 503 WLB (S.D.Ill. July 8, 1993), did not apply, thereby upholding the

geographical restriction as applied to United Disposal. *See United Disposal of Bradley,*

*Inc. v. Pollution Control Bd.*, 363 Ill.App.3d 243, 842 N.E.2d 1161 (3rd Dist. 2006).

The Illinois Environmental Protection Act ("the Act") prohibits, among other

things, the ". . . transport[ing] of any waste into this State for disposal, treatment, storage

or abandonment, except at a site or facility which meets the requirements of this Act and

of regulations and standards thereunder." 415 ILCS 5/21(e).  Thus, if Plaintiff Neblock

Trucking, Inc. ("Neblock"), for instance, attempts to rely on the amended permit, a

person may be able to bring a citizen suit before the IPCB alleging that Neblock is

illegally transferring waste at the United Disposal transfer station from outside of the

geographic limitations of the former permit which upheld by the IPCB and the state

appellate court, and arguing that the new permit is not valid since it is not accompanied

6

by site location approval and/or alleging that Illinois EPA had not authority to issue it. *See* 415 ILCS 5/39.2 (the former being the same argument previously raised by the Defendant in this case).[3] Since Neblock is a resident of Illinois, a citizen suit filed before the IPCB or a state circuit court gives Neblock no ability to have it removed to U.S. District Court (*i.e.,* a federal question in defense of a claim is insufficient for removal to federal court). Thus, there thus remains a present case and controversy, particularly if the impact of the mootness determination is the procedural "erasure" of the Court's August 26, 2009, ruling in this case.

Because of the procedural posture of this Case, Plaintiffs were not permitted to file an opposition to the Motion to Dismiss and this Court granted the Motion to Dismiss partly, plaintiffs believe, on the basis that third party plaintiffs would appear before *this* Court, not a state court. Thus, the true nature of the lack of mootness was not fully before the Court on that date. For the Court's convenience, Plaintiffs attach as Exhibit C a true and correct copy of the Transcript of the December 17, 2009 proceedings.

Not only does injunctive relief remain appropriate, but it appears, by Illinois EPA's own representations, to be the only way to settle Plaintiffs' and Defendant's legal status and prevent the geographical restriction from re-appearing.[4]

---

[3] Also, third parties have been permitted to bring causes of action against those who violate the Act under a variety of damage theories. *See, e.g., Test Drilling Srv. Co. v. Hanor, et al.,* 322 F.Supp.2d 957, 959-60 (C.D. Ill. 2003) (alleging violations of § 21(d) by improperly disposing waste, causing extensive property damage); *Midland Life Ins. Co. v. Regent Partners I Gen. P'ship,* 1996 WL 604038 (N.D. Ill. Oct. 17, 1996) (alleging violations of § 21(e) by dumping waste in an unauthorized manner, seeking restitution for clean-up costs); *Envirite Corp. v. Illinois E. P. A.,* 632 N.E.2d 1035 (Ill. 1994) (alleging violations of §21(e) by dumping waste in an unauthorized manner, causing general damages). In each of the aforementioned cases, third-party plaintiffs have been able to maintain a cause of action against a party allegedly violating the Act—even where the third party did not ultimately succeed on the merits, the decisions do not suggest that any party challenged these third parties' standing to sue, and no court, state or federal, concluded that standing was lacking.

[4] This case is quite different from those where the *statute itself* is amended, repealed, or expires. *See, e.g., Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago,* 326 F.3d 924, 928 (2003); *Rembert v. Sheahan,* 62 F.3d 937, 939 (7th Cir. 1995); *Thomas v. Fiedler,* 884 F.2d 990, 995 (7th Cir.1989). *See also,*

### B.   The defendant faces a potential third-party action in Quo Warranto

Illinois EPA previously put on record a statement that it has "no authority to make such a unilateral decision" and remove the discriminatory permit condition. (Exhibit A, p. 5).   However, with its voluntary permit change removing the discriminatory permit condition, it has now done in this case what, on February 24, 2004, it said could not be done legally.[5]

An Illinois statute, 735 ILCS 5/18-101, provides, in relevant part, that a proceeding in *quo warranto* may be brought in case:

> (2) Any person holds or claims to hold or exercise any
> privilege, exemption or license which has been improperly
> or without warrant of law issued or granted by any officer,
> board, commissioner, court, or other person or persons
> authorized or empowered by law to grant or issue such
> privilege, exemption or license;

Defendant's inconsistent position (*i.e.*, that he has the legal authority to change permit versus Illinois EPA's on the record representation that it does not have such authority), is a red carpet request for such a challenge, which, if raised, calls into question the very action which has been determined to moot Plaintiffs' request for injunction in this case.   Thus, the Defendant's prior representation that he could not voluntarily change

---

*e.g., Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 474 (1990); *Mass. v. Oakes*, 491 U.S. 576, 582-83 (1989); *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982); *Kremens v. Bartley*, 431 U.S. 119, 128-29 (1977); *Diffenderfer v. Cent. Baptist Church, Inc.*, 404 U.S. 412, 415 (1972). In those cases, courts will assume—unless faced with contrary evidence—that the government will not reenact the law. *See Fed'n of Adver. Indus. Representatives*, 326 F.3d at 930 (". . . the *complete repeal of a challenged law* renders a case moot, unless there is evidence creating a reasonable expectation that the City will reenact the ordinance or one substantially similar.") (emphasis added). Defendant has amended the permit, but the laws and regulations requiring siting approval and forbidding Defendant from issuing permits without them remain on the books. As much as Defendant might want to avoid re-enacting the restriction, permanent injunction is his *only* feasible protection from future litigation and is Plaintiffs' only guarantee that the unconstitutional restriction will not re-appear.

[5] John Kim, the attorney for Illinois EPA on the brief attached as Exhibit A, is now the Chief Legal Counsel for the Illinois EPA.

the permit legally raises serious doubts of Illinois EPA's ability to moot this cause of action by voluntarily changing the permit.

## CONCLUSION

WHEREFORE, for the reasons stated above, Plaintiffs respectively request that this Court grant their Motion for Reconsideration or, in the alternative, clarify that its mootness determination of December 17, 2009, relies on and incorporates its August 26, 2009, Memorandum and Opinion.

Dated: January 14, 2010                    Respectfully submitted,


                                           /s/ Jennifer J. Sackett Pohlenz
                                           Jennifer J. Sackett Pohlenz
                                           Illinois Bar No. 6225990
                                           Indiana Bar No. 18864-45-A
                                           QUERREY & HARROW
                                           175 West Jackson Boulevard, Suite 1600
                                           Chicago, IL 60604-2827
                                           Telephone: 312.540.7540
                                           Facsimile: 312.540.0578


                                           Charles M. English, Jr.
                                           D.C. Bar No. 386572
                                           Ober, Kaler, Grimes & Shriver, P.C.
                                           1401 H Street, N.W. Suite 500
                                           Washington, D.C. 20005-3324
                                           Telephone: 202.408.8400
                                           Facsimile: 202.408.0640