# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NEBLOCK TRUCKING, INC., JOHN ANDRUCH AND JACK ANDRUCH, JR. d/b/a/ WALNUT FARMS,<br><br>Plaintiffs,<br><br>v.<br><br>DOUGLAS P. SCOTT, in his official capacity as Director of the Illinois Environmental Protection Agency,<br><br>Defendant. | No. 09 C 1985<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Neblock Trucking, Inc. ("Neblock"), John Andruch and Jack Andruch, Jr. ("Andruch Brothers") (collectively, "Plaintiffs") filed this action against Douglas P. Scott ("Scott"), in his official capacity as Director of the Illinois Environmental Protection Agency ("IEPA"), alleging that a permit issued by the IEPA violated Article I, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause"). (R. 17, Corrected Compl.) After the Court's ruling on a prior motion to dismiss, Scott filed an additional motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). (R. 41, Def.'s Mot. to Dismiss.) In his motion, Scott argues that actions subsequently taken by the IEPA rendered Plaintiffs' action moot. (*Id.*) The Court granted Scott's motion on December 17, 2009, and dismissed Plaintiffs' suit without prejudice. (R. 44, Min. Entry.) Presently before the Court is Plaintiffs' motion for reconsideration and clarification. (R. 45, Pls.' Mot. for. Recons.) For the reasons stated below, Plaintiffs' motion is denied.

# BACKGROUND[1]

## I. Relevant Prior Proceedings

Prior to December 22, 2004, the Illinois Environmental Protection Act (the "Act"), 415 Ill. Comp. Stat. 5/1 *et seq.*, distinguished between regional pollution control facilities ("RPCF") and local pollution control facilities ("LPCF"). (R. 17, Corrected Compl. ¶ 6.) LPCFs were prohibited from receiving waste generated outside of the local general purpose unit of government in which they were located, while RPCFs did not have such a limitation. (*Id.* ¶ 18.) To obtain an IEPA permit for a LPCF, zoning approval of the local government in which the LPCF was located was required. (*Id.*) RPCFs, on the other hand, had to obtain site location approval pursuant to the Act. (*Id.*) After the December 22, 2004 effective date of an amendment to the Act, the distinction between RPCFs and LPCFs was eliminated, and all new pollution control facilities, including transfer stations, were required to obtain site location approval. (*Id.* ¶ 20.)

Prior to the effective date of this amendment, United Disposal of Bradley, Inc. ("United Disposal")–which operates both a waste collection business and a waste transfer station–applied for a development permit to construct a LPCF in Bradley, Illinois. (*Id.* ¶¶ 4, 21, 23.) After United Disposal received local zoning approval from Bradley, the IEPA granted its application for a development permit on September 21, 1994 (No. 1994-306-DE). (*Id.* ¶ 23.) On December

---

[1] A court may consider extrinsic matter bearing on a motion to dismiss for lack of jurisdiction without converting that motion into one for summary judgment. *Sanchez v. Edgar*, 710 F.2d 1292, 1295 n.2 (7th Cir. 1983); *see Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 701 (7th Cir. 2003) (holding that a "court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists"). Accordingly, the Court will look beyond the allegations in the complaint in determining whether subject matter jurisdiction exists.

5, 1994, United Disposal applied for an operational permit from the IEPA. (*Id.* ¶ 24.) In January 1995, the IEPA issued United Disposal the operational permit for its solid waste transfer station in Bradley (No. 1994-306-OP). (*Id.*) The issued operational permit contained Special Condition No. 9, which provided: "No waste generated outside of the municipal boundaries of the Village of Bradley may be accepted at this facility." (*Id.*)

On March 31, 2003, United Disposal filed an application with the IEPA for modification of their operating permit in which they requested that Special Condition No. 9 be removed from their operational permit. (*See id.* ¶ 25; R. 45, Pls.' Mot. for. Recons., Ex. B at 3.) The IEPA denied their request, and the Illinois Pollution Control Board ("IPCB") subsequently affirmed the denial. (R. 45, Pls.' Mot. for. Recons., Ex. B at 13.) In affirming, the IPCB found that before the IEPA could grant the requested modification to United Disposal's operating permit, "United Disposal must request a corresponding change to its development permit." *United Disposal of Bradley v. Illinois Envtl. Prot. Agency*, PCB 03-325, 2004 WL 1470978, at *14 (Ill. Poll. Control Bd. June 17, 2004). Additionally, the IPCB concluded that "proof of local siting approval is a condition precedent to the [IEPA] granting a modification to [United Disposal's] development permit." (*Id.*) United Disposal appealed the IPCB's decision to the Appellate Court of Illinois, Third District. (R. 17, Corrected Compl. ¶ 25.) Again, the denial of United Disposal's application was affirmed. *United Disposal of Bradley, Inc. v. Pollution Control Bd.*, 842 N.E.2d 1161, 1168 (2006).

## II. The Present Litigation

Neblock is a corporation engaged in the business of hauling steel. (*Id.* ¶ 9.) In the execution of its business in and outside of Illinois, Neblock also generates waste. (*Id.*) Neblock

3

has sought to have United Disposal collect waste and transfer its waste through United Disposal's Bradley waste transfer station. (*Id.*) United Disposal informed Neblock that it could not accept waste generated outside of Bradley because of Special Condition No. 9's geographic limitation. (*Id.*)

The Andruch Brothers operate Walnut Farms, a feed and livestock farm, and have sought to bring the waste they generate on their farm to United Disposal's transfer station. (*Id.* ¶ 11.) Similarly, United Disposal informed them that it was unable to accept waste generated outside of Bradley because of Special Condition No. 9. (*Id.*)

On March 31, 2009, Plaintiffs, along with several other parties, filed a two-claim complaint against Scott.[2] (R. 1, Compl.) In their complaint, Plaintiffs alleged that Special Condition No. 9, acting in conjunction with 415 Ill. Comp. Stat. 5/21(d)(1),[3] "discriminates against waste generated outside of Bradley and outside of Illinois in violation of [the Commerce Clause]." (R. 17, Corrected Compl. ¶ 35.) As a remedy for this alleged violation, Plaintiffs sought declaratory and injunctive relief. (*Id.* ¶ 36.)

Scott filed a motion to dismiss on May 20, 2009. (R. 24, Def.'s Prior Mot. to Dismiss.) The Court, on August 26, 2009, partially granted his motion. *Liberty Disposal, Inc. v. Scott*, 648 F. Supp. 2d 1047, 1056 (N.D. Ill. 2009). Specifically, the Court dismissed all parties except for Neblock and the Andruch Brothers for lack of standing. *Id.* at 1054. Additionally, Plaintiffs'

---

[2] Due to an electronic filing error, Plaintiffs filed a corrected complaint on May 7, 2009. (R. 17, Corrected Compl.)

[3] This provision of state law prohibits any person from conducting any waste-storage, waste-treatment, or waste-disposal operation without a permit or in violation of any conditions imposed by a permit. *See* 415 Ill. Comp. Stat. 5/21(d)(1).

first claim for relief was also dismissed. *Id.* The Court did, however, find that Plaintiffs' second claim for relief pursuant to 42 U.S.C. § 1983–which alleged a violation of the Commerce Clause–withstood a motion to dismiss. *Id.* at 1055.

On December 11, 2009, the IEPA removed Special Condition No. 9 from United Disposal's permit.[4] (R. 41, Def.'s Mot., Ex. A.) That same day, Scott filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). (*Id.*) In his motion, Scott argued that the IEPA's voluntary removal of Special Condition No. 9 rendered Plaintiffs' action moot. (*Id.* at 2-3.) The Court granted Scott's motion on December 17, 2009, and dismissed Plaintiffs' suit without prejudice. (R. 44, Min. Entry.)

Plaintiffs filed a motion for reconsideration and clarification on January 14, 2010. (R. 45, Pls.' Mot. for. Recons.) In their motion, they argue that Scott's "voluntary, unilateral decision to modify the permit is insufficient to resolve the controversy." (*Id.* at 3.) Plaintiffs maintain that because Scott's authority to remove Special Condition No. 9 is questionable, potential third-party suits challenging the revised permit indicate that he "has certainly not shown it is 'absolutely clear' that future litigation will not force him to restore the restrictions or that a future administration will not do so." (*Id.* at 6.) As a result, they contend that this action is not moot. Alternatively, they ask the Court to "clarify that [our] mootness determination of December 17, 2009, relies on and incorporates [our] August 26, 2009 Memorandum and Opinion." (*Id.* at 9.)

---

[4] The letter setting forth this change suggests that the modification was made to United Disposal's development and operational permits. (*See* R. 41, Def.'s Mot. to Dismiss, Ex. A ("The special conditions of revised Permit No. 1994-306-DE/OP are identical to all previous permits, except Condition A.13 has been modified by removal of the description of the waste acceptance area.").)

5

## LEGAL STANDARD

A motion for reconsideration, or, to be precise, a motion to alter or amend a judgment pursuant to Rule 59(e) "is permissible when there is newly discovered evidence or there has been a manifest error of law or fact."[5] *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). To succeed on a Rule 59(e) motion, the movant must "clearly establish" one of the aforementioned grounds for relief. *Id.* When the basis for relief is a manifest error of law, the movant must bring to the court's attention the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *See Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). The decision whether to grant or deny a Rule 59(e) motion is entrusted to the sound judgment of the district court. *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

## ANALYSIS

Under Article III of the Constitution, "cases that do not involve 'actual, ongoing controversies' are moot and must be dismissed for lack of jurisdiction." *Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003) ("*Federation*") (quoting *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 990-91 (7th Cir. 2000)). "It is fundamental to the exercise of judicial power under Article III of the United States Constitution

---

[5] Plaintiffs fail to state the basis on which they urge the Court to reconsider its prior ruling. (*See* R. 45, Pls.' Mot. for. Recons.) Although there is technically no such thing as a motion for reconsideration under the Federal Rules of Civil Procedure, *Talano v. Northwestern Medical Faculty Found., Inc.*, 273 F.3d 757, 760 n.1 (7th Cir. 2001), the Court finds that Plaintiffs' motion is properly considered a motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e). "Whether a [timely filed motion] should be analyzed under Rule 59(e) or Rule 60(b) depends on the *substance* of the motion, not on the timing or label affixed to it." *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008). Where a motion for reconsideration is based on errors of law, it is properly analyzed under Rule 59(e). *See id.* at 493-94. Here, since Plaintiffs' timely motion is based on the legal conclusion drawn by the Court in its December 17, 2009 ruling, their motion will be analyzed under Rule 59(e).

6

that 'federal courts may not give opinions upon moot questions or abstract propositions.'" *Zessar v. Keith*, 536 F.3d 788, 793 (7th Cir. 2008) (quoting *Protestant Mem'l Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 729 (7th Cir. 2006)).

The general rule is that voluntary cessation of a challenged practice rarely moots a federal case because a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior. *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 999 (7th Cir. 2002) (internal citations and quotation marks omitted). In accordance with this principle, the standard the Supreme Court has "announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Exp. Assn.*, 393 U.S. 199, 209 (1968)). The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. *Id.*

While the standard articulated in *Laidlaw* generally applies in cases between private parties, the Seventh Circuit has taken a different view towards acts of voluntary cessation by government officials. *Federation*, 326 F.3d at 929. The Seventh Circuit has stated that "[w]hen the defendants are public officials . . . we place greater stock in their acts of self-correction, so long as they appear genuine." *Id.* (quoting *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991)); *see also Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988) ("We note additionally that cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties.") (citing Charles

7

Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.7, at 353 (2d ed. 1984)). Indeed, relying upon *Federation* and *Ragsdale*, the Seventh Circuit has noted that "[c]omity, moreover–the respect or *politesse* that one government owes another, and thus that the federal government owes state and local governments–requires us to give some credence to the solemn undertakings of local officials." *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir. 2006).

The record indicates that the source of this controversy–Special Condition No. 9–has been removed from United Disposal's permits. (R. 41, Def.'s Mot. to Dismiss, Ex. A.) Thus, the question before the Court becomes whether this unilateral action by the IEPA moots this suit. Since this case involves defendants who are public officials, the Court must take greater stock in the IEPA's act of self-correction, so long it appears genuine.[6] *See Federation*, 326 F.3d at 929. An act of self-correction is not considered genuine where there is evidence indicating that the defendant plans to or has already reverted to engaging in the challenged behavior. *Cf. id.* at 930 (holding that "repeal of a contested ordinance moots a plaintiff's injunction request, absent evidence that the City plans to or already has reenacted the challenged law or one substantially similar").

Here, nothing before the Court suggests that Scott is planning to, or has already reverted

---

[6] Plaintiffs acknowledge the existence of *Federation* and other cases supporting this proposition. (R. 45, Pls.' Mot. for. Recons. at 7 n.4.) They attempt to distinguish their case from *Federation* by highlighting the different forms of governmental action. (*Id.* ("This case is quite different from those where the *statute itself* is amended, repealed, or expires.").) The Court rejects this distinction as the analysis under *Federation* turns on the identity of the defendant, and not on the form of governmental action. *See Federation*, 326 F.3d at 929.

8

to, reinserting Special Condition No. 9 into United Disposal's permits.[7] Further, the Court will not presume that Scott is waiting for dismissal of this action to then reinsert Special Condition No. 9. *Cf. Federation*, 326 F.3d at 929 (holding that federal courts will ordinarily not presume that government officials acted in bad faith in repealing a challenged law and harbor hidden motives to reenact the statute after dismissal). In the absence of any evidence creating a reasonable expectation that Scott will reinsert Special Condition No. 9 into United Disposal's permits, the Court finds that Plaintiffs' action for injunctive and declaratory relief is moot, and was thus properly dismissed. *See Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006) (holding that in an action seeking only injunctive relief, once the threat of the action sought to be enjoined dissipates, the suit ordinarily must be dismissed as moot).

Plaintiffs make two primary arguments attempting to persuade the Court that this case is not moot. First, they maintain that a third-party citizen suit may be brought against them for transporting waste from outside of Bradley to United Disposal's transfer station. (R. 45, Pls.' Mot. for. Recons. at 6-7.) They contend that these third-parties would seek to invalidate the modified permit by arguing that it was issued without site approval or, alternatively, that the IEPA did not have authority to issue it. (*Id.*) In their brief, Plaintiffs correctly note that, on prior occasions, the IEPA has stated that it could not remove Special Condition No. 9 because such a change to United Disposal's operational permit could only be performed after it (1) received site location approval, and (2) removed Special Condition No. 9 from its development permit. (*See id.*, Ex. A at 6.) Because the unilateral removal in this case failed to satisfy both conditions,

---

[7] In addition to removing Special Condition No. 9, Scott has also removed all allegations relating to Special Condition No. 9 from an enforcement action pending against United Disposal. (R. 63, Pls.' Reply, Ex. A.)

Plaintiffs argue that third-parties will seek to invalidate the modified permit. (*Id.*) This argument does not unsettle the Court's mootness determination because even assuming that these speculative third-party suits are successful, the invalidation of the modified permit fails to indicate that Scott will attempt to reinsert Special Condition No. 9 in any subsequently issued permits. Indeed, in light of statutory changes eliminating the distinction between RPCFs and LPCFs, it does not seem likely that a geographically limiting condition will reappear in any subsequently issued permit.[8]

Second, Plaintiffs contend that this case is not moot because there is a risk of a potential third-party action in *quo warranto*.[9] (R. 45, Pls.' Mot. for. Recons. at 8-9.) Specifically, Plaintiffs argue that Scott's inconsistent position regarding his ability to remove Special Condition No. 9 serves as a "red carpet request" for third-parties to challenge the new permit. (*Id.*) The Court also finds this argument unconvincing. Even if such a suit is filed, is successful,

---

[8] Plaintiffs' reliance on *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216 (2000) is also unpersuasive. (R. 45, Pls.' Mot. for. Recons. at 5-6.) In *Adarand*, the Supreme Court reversed a lower court's conclusion that the case had become moot once the state granted the petitioner the relief it sought. 528 U.S. at 221-24. It found that the case was not moot because the relief sought–a certification granting the petitioner disadvantaged business status for purposes of receiving federal contracts–was granted using procedures that had not been properly approved. *Id.* Given the questions regarding the validity of the certification procedures used in granting this relief, the Supreme Court concluded that there remained a risk that petitioner would be stripped of the obtained relief. *Id.* The case before the Court is distinguishable because, here, there is nothing in the record indicating that Plaintiffs will be stripped of the relief that has already been achieved by Scott's unilateral action: the removal of Special Condition No. 9 from United Disposal's permits.

[9] Under Illinois law, a proceeding in *quo warranto* may be brought in case "[a]ny person holds or claims to hold or exercise any privilege, exemption or license which has been improperly or without warrant of law issued or granted by any officer, board, commissioner, court, or other person or persons authorized or empowered by law to grant or issue such privilege, exemption or license." 735 Ill. Comp. Stat. 5/18-101.

and somehow leads to the invalidation of the modified permit, nothing in the record indicates that Special Condition No. 9 will reappear in any future permits issued to United Disposal.

As a final matter, the Court will address Plaintiffs' request that we "clarify that [our] mootness determination of December 17, 2009, relies on and incorporates [our] August 26, 2009 Memorandum and Opinion." (R. 45, Pls.' Mot. for. Recons. at 9.) Despite the Court's best efforts to grasp what Plaintiffs are requesting, it is unclear what they are asking the Court to clarify. Based on the Court's reading of their motion, it appears as if Plaintiffs are attempting to convert the August 26, 2009 order into "binding precedent" to protect against speculative future attacks on the modified permit. (*See id.* at 3-4.) This request misunderstands the nature of the Court's August 2009 ruling. In our August 2009 ruling, the Court merely concluded that Plaintiffs had pleaded enough with respect to their Section 1983 claim to withstand a motion to dismiss. See *Liberty Disposal*, 648 F. Supp. 2d at 1056. The Court did not, however, enter a final judgment on the constitutionality of Special Condition No. 9. *Id.* Thus, Plaintiffs' concerns regarding the "procedural erasure," of the August 2009 ruling are misplaced. (*See* R. 45, Pls.' Mot. for. Recons. at 7.) The Court finds that no further clarification regarding the relationship between its August 2009 and December 2009 rulings is necessary. Therefore, plaintiffs' motion to clarify (R. 45) is denied.

## CONCLUSION

The Court did not commit a manifest error of law in dismissing this suit on mootness grounds. Accordingly, Plaintiffs' motion for reconsideration and clarification (R. 45) is DENIED. Scott's motion to dismiss (R. 54) is GRANTED. The Court has discerned no substantive legal difference between Plaintiffs' "corrected" and "amended" complaints. Both are dismissed without

prejudice for the mootness reasons outlined herein.

Entered: /s/ Ruben Castillo

**Judge Ruben Castillo**
**United States District Court**

**Dated:** July 21, 2010