UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEBLOCK TRUCKING, INC., JOHN ANDRUCH AND JACK ANDRUCH, JR. d/b/a/ WALNUT FARMS,<br><br>Plaintiffs,<br><br>v.<br><br>DOUGLAS P. SCOTT, in his official capacity as Director of the Illinois Environmental Protection Agency,<br><br>Defendant. | No. 09 C 1985<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Neblock Trucking, Inc. ("Neblock"), John Andruch and Jack Andruch, Jr. (the "Andruch Brothers") (collectively, "Plaintiffs") filed this action against Douglas P. Scott ("Scott"), in his official capacity as Director of the Illinois Environmental Protection Agency ("IEPA"), alleging that a permit issued by the IEPA violated Article I, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause"). (R. 17, Corrected Compl.) After the Court's ruling on a prior motion to dismiss, Scott filed an additional motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). (R. 41, Def.'s Mot. to Dismiss.) In his motion, Scott argued that actions subsequently taken by the IEPA rendered Plaintiffs' action moot. (*Id.*) The Court granted Scott's motion on December 17, 2009, and dismissed Plaintiffs' suit without prejudice.[1] (R. 44,

---

[1] Plaintiffs subsequently filed a motion for reconsideration and clarification. (R. 45, Pls.' Mot. for Recons.) This motion was denied on July 21, 2010. (R. 64, Min. Entry.) In denying their motion for reconsideration, the Court, after concluding that there was no substantive legal difference between Plaintiffs' corrected and amended complaint, also dismissed their amended complaint without prejudice.

Min. Entry.) Presently before the Court is Plaintiffs' petition for fees and motion for instructions pursuant to 42 U.S.C. § 1988 ("Section 1988"), Federal Rule of Civil Procedure 56(d), and Local Rule 54.3. (R. 49, Pls.' Pet.) For the reasons stated below, Plaintiffs' petition and motion are denied.

## BACKGROUND

### I. Relevant Prior Proceedings

Prior to December 22, 2004, the Illinois Environmental Protection Act (the "Act"), 415 Ill. Comp. Stat. 5/1 *et seq.*, distinguished between regional pollution control facilities ("RPCFs") and local pollution control facilities ("LPCFs"). (R. 17, Corrected Compl. ¶ 6.) LPCFs were prohibited from receiving waste generated outside of the local general purpose unit of government in which they were located, while RPCFs did not have such a limitation. (*Id.* ¶ 18.) To obtain an IEPA permit for a LPCF, zoning approval of the local government in which the LPCF was located was required. (*Id.*) RPCFs, on the other hand, had to obtain site location approval pursuant to the Act. (*Id.*) After the December 22, 2004 effective date of an amendment to the Act, the distinction between RPCFs and LPCFs was eliminated, and all new pollution control facilities, including transfer stations, were required to obtain site location approval. (*Id.* ¶ 20.)

Prior to the effective date of this amendment, United Disposal of Bradley, Inc. ("United Disposal")–which operates both a waste collection business and a waste transfer station–applied for a development permit to construct a LPCF in Bradley, Illinois. (*Id.* ¶¶ 4, 21, 23.) After United Disposal received local zoning approval from Bradley, the IEPA granted its application for a development permit on September 21, 1994 (No. 1994-306-DE). (*Id.* ¶ 23.) On December

2

5, 1994, United Disposal applied for an operational permit from the IEPA. (*Id.* ¶ 24.) In January 1995, the IEPA issued United Disposal the operational permit for its solid waste transfer station in Bradley (No. 1994-306-OP). (*Id.*) The issued operational permit contained Special Condition No. 9, which provided: "No waste generated outside of the municipal boundaries of the Village of Bradley may be accepted at this facility." (*Id.*)

On March 31, 2003, United Disposal filed an application with the IEPA for the modification of their operating permit, in which they requested that Special Condition No. 9 be removed from their operational permit. (*See id.* ¶ 25; R. 45, Pls.' Mot. for. Recons., Ex. B at 3.) The IEPA denied their request, and the Illinois Pollution Control Board ("IPCB") subsequently affirmed the denial. (R. 45, Pls.' Mot. for. Recons., Ex. B at 13.) In affirming, the IPCB found that before the IEPA could grant the requested modification to United Disposal's operating permit, "United Disposal must request a corresponding change to its development permit." *United Disposal of Bradley v. Ill. Envtl. Prot. Agency*, PCB 03-325, 2004 WL 1470978, at *14 (Ill. Poll. Control Bd. June 17, 2004). Additionally, the IPCB concluded that "proof of local siting approval is a condition precedent to the [IEPA] granting a modification to [United Disposal's] development permit." (*Id.*) United Disposal appealed the IPCB's decision to the Appellate Court of Illinois, Third District. (R. 17, Corrected Compl. ¶ 25.) Again, the denial of United Disposal's application was affirmed. *United Disposal of Bradley, Inc. v. Pollution Control Bd.*, 842 N.E.2d 1161, 1168 (Ill. App. Ct. 2006).

## II. The Present Litigation

Neblock is a corporation engaged in the business of hauling steel. (*Id.* ¶ 9.) In the execution of its business in and outside of Illinois, Neblock also generates waste. (*Id.*) Neblock

3

has sought to have United Disposal collect and transfer its waste through United Disposal's Bradley waste transfer station. (*Id.*) United Disposal informed Neblock that it could not accept waste generated outside of Bradley because of Special Condition No. 9's geographic limitation. (*Id.*)

The Andruch Brothers operate Walnut Farms, a feed and livestock farm, and have sought to bring the waste they generate on their farm to United Disposal's transfer station. (*Id.* ¶ 11.) Similarly, United Disposal informed them that it was unable to accept waste generated outside of Bradley because of Special Condition No. 9. (*Id.*)

On March 31, 2009, Plaintiffs, along with several other parties, filed a two-claim complaint against Scott.[2] (R. 1, Compl.) In their complaint, Plaintiffs alleged that Special Condition No. 9, acting in conjunction with 415 Ill. Comp. Stat. 5/21(d)(1),[3] "discriminates against waste generated outside of Bradley and outside of Illinois in violation of [the Commerce Clause]." (R. 17, Corrected Compl. ¶ 35.) As a remedy for this alleged violation, Plaintiffs sought declaratory and injunctive relief. (*Id.* ¶ 36.)

Scott filed a motion to dismiss on May 20, 2009. (R. 24, Def.'s Prior Mot. to Dismiss.) The Court, on August 26, 2009, partially granted his motion. *Liberty Disposal, Inc. v. Scott*, 648 F. Supp. 2d 1047, 1056 (N.D. Ill. 2009). Specifically, the Court dismissed all parties–except for Neblock and the Andruch Brothers–for lack of standing. *Id.* at 1054. Additionally, Plaintiffs'

---

[2] Due to an electronic filing error, Plaintiffs filed a corrected complaint on May 7, 2009. (R. 17, Corrected Compl.)

[3] This provision of state law prohibits any person from conducting any waste-storage, waste-treatment, or waste-disposal operation without a permit or in violation of any conditions imposed by a permit. *See* 415 Ill. Comp. Stat. 5/21(d)(1).

first claim for relief was also dismissed. *Id.* The Court did, however, find that Plaintiffs' second claim for relief pursuant to 42 U.S.C. § 1983 ("Section 1983")–which alleged a violation of the Commerce Clause–withstood the motion to dismiss. *Id.* at 1055.

On December 11, 2009, the IEPA removed Special Condition No. 9 from United Disposal's permit.[4] (R. 41, Def.'s Mot., Ex. A.) That same day, Scott filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). (*Id.*) In his motion, Scott argued that the IEPA's voluntary removal of Special Condition No. 9 rendered Plaintiffs' action moot. (*Id.* at 2-3.) The Court granted Scott's motion on December 17, 2009, and dismissed Plaintiffs' suit without prejudice. (R. 44, Min. Entry.) The Court retained post-judgment jurisdiction on the issue of attorneys' fees. (R. 51, Tr. of Dec. 17, 2009 Proceedings at 4-5.)

Plaintiffs filed a motion for reconsideration and clarification on January 14, 2010. (R. 45, Pls.' Mot. for. Recons.) In their motion, they argued that Scott's "voluntary, unilateral decision to modify the permit is insufficient to resolve the controversy." (*Id.* at 3.) Plaintiffs maintained that because Scott's authority to remove Special Condition No. 9 is questionable, potential third-party suits challenging the revised permit indicate that he "has certainly not shown it is 'absolutely clear' that future litigation will not force him to restore the restrictions or that a future administration will not do so." (*Id.* at 6.) As a result, they contended that this action is not moot. (*Id.* at 4-6.) Alternatively, they asked the Court to "clarify that [our] mootness determination of December 17, 2009, relies on and incorporates [our] August 26, 2009 Memorandum and

---

[4] The letter setting forth this change suggests that the modification was made to United Disposal's development and operational permits. (*See* R. 41, Def.'s Mot. to Dismiss, Ex. A ("The special conditions of revised Permit No. 1994-306-DE/OP are identical to all previous permits, except Condition A.13 has been modified by removal of the description of the waste acceptance area.").)

5

Opinion." (*Id.* at 9.) The Court denied Plaintiffs' motion for reconsideration and clarification on July 21, 2010. (R. 64, Min. Entry.)

Approximately two weeks after filing their motion for reconsideration and clarification, Plaintiffs filed a petition for attorneys' fees and motion for instructions. (R. 49, Pls.' Pet.) In their petition for fees, Plaintiffs argue that they are prevailing parties entitled to fees because the removal of Special Condition No. 9 from United Disposal's permits came after Scott "los[t] the [May 2009 motion to dismiss] in such a way that the discrimination issue had been decided in the Plaintiffs' favor." (R. 49, Pls.' Pet. ¶¶ 4, 12.) Additionally, given Scott's alleged "all-or-nothing approach" towards fees, Plaintiffs ask, pursuant to Local Rule 54.3(g), for "instructions from the Court as to what, if any, further procedure in addition to this Petition, the Court wants Plaintiffs to initiate with [Scott] on fees." (*Id.* ¶¶ 15-19.)

## LEGAL STANDARD

In any action or proceeding to enforce Section 1983, The Civil Rights Attorney's Fees Awards Act of 1976 authorizes district courts to award reasonable attorney's fees to a "prevailing party." 42 U.S.C. § 1988(b). It is well-established that the term "prevailing party" as used in Section 1988 "includes only those parties that have achieved a 'judicially sanctioned change in the legal relationship of the parties.'" *Zessar v. Keith*, 536 F.3d 788, 795 (7th Cir. 2008) (quoting *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 605 (2001)). "'[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim.'" *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)). Status as a prevailing party is a threshold determination under Section 1988. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

6

**ANALYSIS**

Plaintiffs argue that the Court's August 2009 Memorandum Opinion and Order establishes their status as "prevailing parties" under Section 1988, and thus provides the basis for their petition for attorneys' fees. (R. 49, Pls.' Pet. ¶¶ 4-5.) Specifically, they contend that the Court's ruling decided a "critical and central legal issue" by concluding that Special Condition No. 9 was facially discriminatory and subject to the "*per se*" rule under Dormant Commerce Clause doctrine.[5] (*Id.*) They assert that this ruling, combined with subsequent admissions made by Scott,[6] establish that "the core legal and factual issues in the cases were determined in favor of Plaintiffs." (*Id.* ¶ 7.) Accordingly, Plaintiffs maintain that they "are prevailing parties entitled to fees in this case, as they succeeded on the merits of their case . . . and [Scott] had removed the *per se* discriminatory permit condition from United Disposal's transfer station permits only after losing the Motion to Dismiss in such a way that the discrimination issue had been decided in

---

[5] The Dormant Commerce Clause is generally analyzed under a two-tiered approach. *Alliant Energy Corp. v. Bie*, 330 F.3d 904, 911 (7th Cir. 2003). The first tier is often referred to as the "*per se*" rule, which is applied when a statute "directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests." *Id.* (quoting *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578 (1986)). In such cases, the statute can only be saved by a showing that it "advances a legitimate local purpose that cannot adequately be served by reasonable nondiscriminatory alternatives." *Id.* (quoting *Oregon Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994)). The second tier is for cases where a statute "has only indirect or incidental effects on interstate commerce and regulates evenhandedly." *Id.* (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). Under the second tier analysis, a court will employ the *Pike* balancing test and uphold the statute "unless the burden imposed on [interstate] commerce is clearly excessive in relation to the local benefits." *Id.* In its August 2009 ruling, the Court found that Plaintiffs stated a Dormant Commerce Clause claim that was properly analyzed under the "*per se*" approach. *Liberty Disposal*, 648 F. Supp. 2d at 1054-56.

[6] Plaintiffs point to two admissions: (1) that "the permit conditions at issue prohibit[ed] acceptance of waste from outside of Bradley"; and (2) that "waste is a commodity in interstate commerce." (R. 49, Pls.' Pet. ¶ 6.)

7

Plaintiffs' favor."[7] (*Id.* ¶ 12.) The Court disagrees.

In *Buckhannon*, the Supreme Court rejected as a basis for awarding attorney's fees the "catalyst theory," which deemed the plaintiff a "prevailing party" if it achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. 532 U.S. at 601-02, 610. Instead, it held that the term "prevailing party," as used in various fee-shifting statutes, includes only those parties who have obtained a "judicially sanctioned change in the relationship of the parties." *Id.* at 605. In rejecting the "catalyst theory," the Supreme Court observed that a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* As examples of the sort of "judicially sanctioned change" required to be deemed a "prevailing party," it cited "enforceable judgments on the merits and court-ordered consent decrees." *Id.* at 604. These two examples, the Supreme Court noted, create the "material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees. *Id.* Such an alteration, it held, must be accompanied by some award of judicial relief. *Id.* at 603; *see Walker v. Calumet City, Ill.*, 565 F.3d 1031, 1033-34 (7th Cir. 2009) (holding that the material alteration "must arise from a court order").

Here, the Court finds that Plaintiffs are not prevailing parties under Section 1988. In its August 2009 ruling, the Court did not enter an enforceable judgment on the merits. *Liberty Disposal*, 648 F. Supp. 2d at 1056. Nor has a court-ordered consent decree been entered. All

---

[7] Contrary to Plaintiffs' statements in their petition, the Court has not recognized that they are "prevailing parties" entitled to fees. In the portion of the record cited by Plaintiffs, the Court merely stated that "there's an argument to be made that plaintiffs have prevailed in this case[.]" (R. 51, Tr. of Dec. 17, 2009 Proceedings at 4-5.)

8

that the August 2009 ruling found was that "Plaintiffs have stated a claim under the dormant Commerce Clause." *Id.* As the Supreme Court observed in *Buckhannon*, mere survival of a motion to dismiss cannot serve as the basis for "prevailing party" status. *See* 532 U.S. at 605 ("Even under a limited form of the 'catalyst theory,' a plaintiff could recover attorney's fees if it established that the 'complaint had sufficient merit to withstand a motion to dismiss for lack of jurisdiction of failure to state a claim on which relief may be granted . . . This is not the type of legal merit that our prior decisions, based upon plain language and congressional intent, have found necessary."). Indeed, even a partial victory on a motion for summary judgment is insufficient to confer "prevailing party" status where the order lacks finality and is unenforceable. *Zessar*, 536 F.3d at 798 (holding that the lack of enforceable terms and disputed nature of the district court's partial summary judgment order rendered it insufficient to provide the basis for "prevailing party" status). Rather, what is needed is a court-ordered material alteration of the legal relationship between the parties. *Walker*, 565 F.3d at 1033-34. In the absence of any enforceable judicial relief to Plaintiffs, there has been no such change in the legal relationship between Plaintiffs and Scott. Accordingly, Plaintiffs cannot be considered a "prevailing party," and are thus ineligible for attorneys' fees pursuant to Section 1988.

In support of their position, Plaintiffs correctly note that *Buckhannon* did not limit the judicial actions necessary to confer "prevailing party" status to enforceable judgments on the merits and court-ordered consent decrees. (R. 63, Pls.' Reply at 2.) What they fail to establish is how survival on a motion to dismiss led to the "material alteration of the *legal* relationship" of the parties in this case. *Buckhannon*, 532 U.S. at 604 (emphasis added). Plaintiffs do not provide any case law which either directly or indirectly supports the proposition that stating a

9

claim for relief–which in turn leads to a non-court ordered change on the part of the defendant–is enough to transform a litigant into a "prevailing party."[8] The cases Plaintiffs cite to support their position are inapposite for one simple reason: they all involve situations where the prevailing party was granted some award of judicial relief which altered the legal relationship between the parties. *See Perez v. Westchester County Dep't of Corrections*, 587 F.3d 143, 149-53 (2d Cir. 2009) (plaintiffs deemed "prevailing parties" after the entry of a judicially reviewed and revised settlement agreement which provided for judicial enforcement); *Saint John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574 F.3d 1054, 1058-61 (9th Cir. 2009) (plaintiff considered "prevailing party" where settlement agreement was judicially enforceable, required certain behavior by defendant, and indicated actual relief on the merits of plaintiff's claim); *Dearmore v. City of Garland*, 519 F.3d 517, 524-26 (5th Cir. 2008) (status as "prevailing party" partially established by the district court's entry of a preliminary injunction); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 949 (D.C. Cir. 2005) (same); *Pres. Coal. of Erie County v. Fed. Transit Admin.*, 356 F.3d 444 (2d Cir. 2004) (finding that plaintiff attained "prevailing party" status when it obtained a court order which materially altered the legal relationship of the parties).

In this case, there has been no award of judicial relief. No injunction has been provided, nor have Scott's actions been required by a judicially enforceable order or settlement agreement. Thus, despite Plaintiffs' statements to the contrary, Scott's removal of Special Condition No. 9

---

[8] Plaintiffs' reliance on *Young v. City of Chicago*, 202 F.3d 1000 (7th Cir. 2000) to support an argument regarding the Seventh Circuit's interpretation of *Buckhannon* is misplaced, as *Young* predates *Buckhannon*.

was voluntary.[9] As previously noted, such a voluntary change by a defendant does not make a plaintiff a "prevailing party." *See Buckhannon*, 532 U.S. at 605 ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change."). Acceptance of Plaintiffs' position in this case would constitute an impermissible drift towards the "catalyst theory" that was clearly rejected in *Buckhannon*. Plaintiffs have not provided any persuasive arguments grounded in existing case law that would justify such a development. Thus, Plaintiffs have failed to show that they are "prevailing parties" under Section 1988.

## CONCLUSION

Plaintiffs are not "prevailing parties," and are thus ineligible for attorneys' fees pursuant to Section 1988. Accordingly, Plaintiffs' petition for fees (R. 49) is DENIED. Given this conclusion, Plaintiffs' motion for instructions (R. 49) is also DENIED.

Entered: /s/

Judge Ruben Castillo
United States District Court

**Dated:** July 28, 2010

---

[9] Plaintiffs argue that they are "prevailing parties" because "Defendant represented, when it amended its complaint against United Disposal in a pending state court action, that this Court found the subject geographical permit restriction to be unconstitutional and, as a result, the state court complaint was amended." (R. 63, Pls.' Reply at 6.) Indeed, the record does indicate that the State of Illinois, in amending its enforcement proceeding against United Disposal, did consider the Court's August 2009 ruling. (*See* R. 63, Pls.' Reply, Ex. A ¶¶ 2-3.) Its subjective belief regarding the import of the August 2009 ruling, however, does not disturb the Court's analysis under the line of cases flowing from *Buckhannon*.